## YOUNG *v.* FUGETT & SMALLING.

JUDGMENTS. *Satisfaction. Notes.* Upon the trial of the issue whether certain judgments were satisfied, the Judge below charged the jury, "that if they found that the judgment debtor was the holder of a note on the judgment creditor given for land, and it was agreed between the parties that the amount of the judgment should be credited on the note, which was accordingly done, and that the judgment should be satisfied, but that the satisfaction was not entered, and, thereafter, in a proceeding in chancery, in which they were parties, the land trade was declared null and void for which the note of the judgment creditor was executed, and the land itself subjected as the property of the judgment debtor to the payment of his debts, the credit of the amount of the judgments on the note became a nullity also, and execution might rightfully issue on the judgments." *Held,* erroneous, either as an abstract proposition of law, or in connection with the facts developed on the trial.

### FROM BEDFORD.

Appeal in error from the Circuit Court of Bedford county. W. H. WILLIAMSON, J.

WISENER & IVIE for Young.

E. COOPER for Fugett & Smalling.

COOPER, J., delivered the opinion of the court.

On the 12th of January, 1871, five judgments were rendered by a justice of the peace against J. B. Young, two of them in favor of A. D. Fugett, and the other three in favor of Fugett & Smalling, a firm composed of A. D. Fugett and T. F. Smalling. On the 14th of April, 1873, executions were issued on these judgments and levied on Young's property, and were by him, together with a subsequent *venditioni exponas,* superseded, upon the ground that the judgments had been previously settled and satisfied. The issue thus tendered was tried in the Circuit Court by a jury, who, under the instructions of the judge, found a verdict in favor of Fugett & Smalling. Young appealed in error.

On the trial, Young and Smalling were both examined, and deposed substantially to the same state of facts. On the very day the judgments were rendered they were, by consent of the parties, satisfied by entering a credit for their full amount on a particular note then held by Young. This note, they both say, was given for land sold to Smalling by Fugett, as trustee for third persons, was executed by Smalling as principal and Young as his surety, bore date the 15th of December, 1866, and was payable, at twelve months, to Fugett for $1,225.83. It was at the time of the credit held by Young as the owner, he having taken

it up by a note of Wiley & Webb for a larger amount. On the 20th of January, 1871, a creditor of Young filed a bill in the Chancery Court at Shelbyville against Young, Fugett and Smalling, to subject to the satisfaction of his debt the land sold by Fugett to Smalling as aforesaid, upon the ground that the purchase was in reality by Young, and that the parties were fraudulently colluding together to cover up Young's property, and to hinder and delay his creditors. On the 16th of February, 1871, another creditor of Young filed his bill in the Chancery Court at Woodbury against the same parties, setting up an equitable lien on the note of Wiley and Webb, exchanged by Young for the Smalling note, and also seeking to reach the land for which the latter note was given, as the property of Young, charging fraudulent collusion between the defendants to hinder and delay creditors. Such proceedings were had in these causes that a final decree was rendered in each, in favor of the complainants, and subjecting the land to the satisfaction of their respective debts, as the property of Young, and giving the creditor in the last bill a lien on the Wiley & Webb note to the extent of about one-third of its amount. In their answers and depositions in these suits, Young, Smalling and Fugett all stated that the sale of the land by Fugett as trustee was made to Smalling; that Smalling executed the note of $1,225.83 as principal, and Young as his security; that Young had taken it up by the Wiley & Webb note; that, while thus holding it, payments had been made on it by Smalling; and

that all of these transactions were, in good faith, what they purported to be, and all fraudulent collusion as charged was denied. Smalling claimed to have made payments to the amount of $1,509.86 on his said note, including in this sum the judgments in controversy, either specifically or by giving the items on which they were based. No memorandum or entry of satisfaction of these judgments was made on the justice's docket.

The charge of the Circuit Judge to the jury was in these words: "If the jury shall find that Young was the holder of a note against Smalling for land, and Smalling, or Fugett & Smalling, held the judgments in controversy against Young, and it was agreed between the parties that the amount of the judgments should be credited by Young on the note, which was accordingly done, and that the judgments should be satisfied, but that the satisfaction was not in fact entered, and, thereafter, in a proceeding in chancery in which they were parties, the land trade was declared null and void for which Smalling executed the notes, and the land was subjected as Young's land to the payment of his debts, the credit of the amount of the judgments on the note became a nullity also, and no satisfaction having been entered, the judgment remained in full force, the executions were rightfully issued, and the jury should find for the defendants."

A creditor may accept the payment of his judgment in any manner he sees proper, and having once accepted anything of value as a satisfaction, he cannot afterwards revoke his act. A legal satisfaction in

any way produces a permanent and irrevocable discharge, after which the judgment cannot be restored: Freem. on Judgments, secs. 463, 466. An entry of satisfaction on the judgment or execution docket is not necessary to work this result. For the payment by the endorser of a note of a judgment against him on the endorsement will, by operation of law, satisfy a judgment of the same creditor against the maker of the note: *Topp* v. *Branch Bank of Alabama,* 2 Swan., 184. So the collection of one of several judgments against *tort feasors* will satisfy the other judgments: *Knott* v. *Cunningham,* 2 Sneed, 204. So payment by an officer holding the execution will satisfy a judgment: *Harwell* v. *Worsham,* 2 Hum., 524. So will a discharge in bankruptcy: *Dick* v. *Powell,* 2 Swan, 632. So will the collection of a collateral security: *Craft* v. *Merrill,* 14 N. Y., 456. So will transactions between the parties resulting, as ascertained by a subsequent account taken in chancery, in turning the balance of account in favor of the judgment debtor: *Keeling* v. *Heard,* 3 Head, 592; *Truscott* v. *King,* 6 N. Y., 147. And the weight of authority is, that a sale by execution on a judgment satisfied in that way, although satisfaction be not entered on the judgment or execution docket, will communicate no title even to an innocent purchaser: Freem. on Judgments, sec. 450. If, therefore, the learned Circuit Judge meant, by his charge, that an entry of satisfaction on the justice's docket was essential to complete an agreement that the judgments should be satisfied by a credit of their amount on the note, he was in error. If his meaning was that there were two agreements,

one that the amount of the judgments should be credited on the note, and the other that the judgments should be satisfied, and that the omission to enter satisfaction of the judgments left them in full force, notwithstanding the fact that the amount of the judgments was credited on the note, he was also in error; for the credit on the note was a satisfaction as to the judgment creditor, the entry on the docket being for the benefit of the judgment debtor, which he might neglect or waive without prejudice to his rights.

It is probable, however, that his Honor simply meant that if the satisfaction agreed upon, namely, the credit on the note, turned out to be worthless to the judgment creditor, the latter might treat the satisfaction as void, and, no actual entry of satisfaction having been made on the judgment, might issue execution on the judgments without any preliminary application to the court to set aside the satisfaction. It is possible to conceive of cases where this would be true. Thus, if the creditor receive payment in bank bills, believing them to be genuine, and give an ordinary receipt, and the bills were counterfeit, he may probably treat the transaction as void for fraud, and issue execution. So, if he receive his own note in payment, and that note was void for some fraud of which he was then not aware, the same result might follow. But if he took the counterfeit bank bills in satisfaction with full knowledge that they were counterfeit, it is difficult to see how he could treat the satisfaction as a nullity. And if his own note, in the other case supposed, was designed to work a spe-

cific purpose, and was executed with full knowledge of all the facts, it is even more difficult to see how the satisfaction could be treated as a nullity, whether the purpose was attained or failed; for, in this view, the satisfaction was at the time real, after which the judgments could not be restored. And if the creditor was estopped to deny the good faith of the transaction, either because it was designed for a fraudulent purpose to which he was a party, or because he had made solemn assertions of record which were conclusive upon him, it is obvious that no subsequent decree declaring the note void would, as a matter of law, avoid the satisfaction. The charge of the Judge, therefore, in the view now under consideration, was not correct as an abstract proposition of law, nor when taken in connection with the facts developed on the trial. No argument was submitted on the point whether, in any case, the satisfaction of the judgment can be so far affected by a decree in a collateral matter or suit bearing on it incidentally, not directly, as to authorize its being treated as a nullity without a preliminary proceeding to set it aside. Under these circumstances we express no opinion on the subject.

The judgment must be reversed and the cause remanded.